IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 11, 2006

## STATE OF TENNESSEE v. DERRICK LAMOUNS JONES

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 7634     Joseph H. Walker, III, Judge**

---

**No. W2005-01589-CCA-R3-CD  - Filed June 30, 2006**

---

Following a bench trial, the defendant, Derrick Lamouns Jones, was convicted of felony DUI, a Class E felony, and violation of the implied consent law and was sentenced to the Department of Correction for two years as a Range I, standard offender, and to the county jail for eleven months, twenty-nine days, respectively.  The sentences were run concurrently with the exception of five days to be served in the county jail.  In addition, the defendant's  driver's license was suspended for five years and he was fined $6000.  On appeal, he argues the trial court erred in denying his motion to suppress and his motion to exclude a prior DUI conviction; the evidence was insufficient to support his convictions; and the trial court improperly sentenced him to an enhanced sentence.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J.C. MCLIN, JJ., joined.

Kari I. Weber and Julie K. Pillow, Assistant Public Defenders, for the appellant, Derrick Lamouns Jones.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Tracey Brewer-Walker, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On June 7, 2004, the defendant was indicted by the Lauderdale County Grand Jury for felony DUI, fourth offense, prior DUI, and violation of the implied consent law.  He filed a motion to suppress evidence obtained from his vehicle stop, arguing that "he was stopped, seized and arrested

without probable cause" and that "there was no objective basis for or articulable facts supporting the stop."

## Suppression Hearing

Officer Louis Ruff of the Ripley Police Department testified that on October 12, 2003, at approximately 5:50 a.m., he received a radio call from fellow Officer James Smith stating that Smith had "observed a black male in the area of Huddle House . . ., that appeared to be intoxicated and had gotten into a blue Cadillac and left the parking lot there." Officer Ruff responded, observed the defendant standing next to a blue Cadillac, and watched as the defendant got into the vehicle and started driving down the street. Believing the defendant was the person Officer Smith had radioed him about, Ruff followed the car "to observe his driving." The defendant immediately "turned into the Wal-Mart parking lot and parked" his car. The officer, who never activated his blue lights or siren, pulled in behind the defendant because he "hadn't had enough time to really observe his driving." As Ruff approached the Cadillac, the defendant exited the car and "was very unsteady on his feet" and "had a strong odor of an alcoholic beverage" on him. The officer also observed two bottles of Cutty liquor in the front seat.

Following the suppression hearing, the trial court entered an order denying the defendant's motion to suppress. The trial court found Officer Ruff "did not make a stop, but approached the defendant on a public lot to investigate a report."

## Trial

### State's Proof

Trooper James Smith,[1] formerly an officer with the Ripley Police Department, testified that on October 12, 2003, he observed the defendant, who appeared to be intoxicated, at the Huddle House in Ripley. Smith said the defendant smelled of alcohol, his "eyes were glassy and bloodshot" and he "was at times laughing and giggling" and "rest[ing] his head on the table." The defendant told the officer "that he had been asking people for a ride to his residence." The defendant walked outside where Smith observed him sitting in the passenger seat of a blue Cadillac. The defendant told Smith "that he was waiting for someone to -- his girlfriend, . . . to come out of the bathroom [and] give him a ride home." The officer walked back into the Huddle House and when he came back outside, the defendant and the blue Cadillac were gone. Smith "called Officer Ruff to put him on notice that an individual that appeared to be intoxicated possibly could be driving a vehicle."

Officer Richard Rhodes, a jailer at the Lauderdale County Justice Center, testified that during the booking process, Officer Ruff attempted to perform a breathalyzer test on the defendant, but the defendant interrupted him while he read the informed consent form, refused to allow him to finish reading the form, refused to sign the form, and ultimately refused to take the breathalyzer. Officer

---

[1] At the time of trial, Trooper Smith worked for the Tennessee Highway Patrol.

Rhodes said the defendant smelled "[f]airly strong" of alcohol and appeared to be intoxicated. On cross-examination, Rhodes acknowledged that the defendant may have asked to be taken to the hospital for a blood test, but he could not recall for certain.

In addition to his testimony at the suppression hearing, Officer Ruff testified at trial that the defendant "stated that he had been drinking." Ruff, who was a trained DUI enforcement officer, conducted a field sobriety test and said the defendant "had a very hard time following instructions" and could not recite the alphabet beyond the letter J. The defendant also needed Ruff to explain the finger count task seven times. Officer Ruff attempted to read the implied consent form to the defendant who "kept interrupting, saying he didn't understand it." Although the defendant initially told Ruff he would take the breathalyzer, he refused to sign the form and ultimately refused to take the test.

Officer Ruff testified that he received a certified copy of the defendant's DUI record from the Tennessee Department of Safety, which showed the defendant had the following DUI convictions: December 14, 1992, in Arkansas; October 26, 1998, in Lauderdale County; November 6, 1998, in Lauderdale County; and May 24, 2001, in Shelby County. Ruff then identified three prior judgments confirming the defendant's DUI convictions in Tennessee.

**Defense Proof**

Officer Antonio Tremaine Reed, who worked at the Lauderdale County Jail, testified that when he booked the defendant, he marked on his medical intake form that the defendant did not appear to be intoxicated and that he was taking Tylenol III. Reed said he could not recall why he would mark that the defendant was not intoxicated, saying he "could have been distracted or [he] just could have forgot[ten] about it."

Cartrell L. Jackson testified that he has known the defendant for ten years and saw him at the Huddle House the night he was arrested. Jackson said the defendant was in the restaurant for at least two hours, and he did not recall the defendant drinking any alcohol or smelling of alcohol.

The defendant testified that, on the night he was arrested, he was at the Huddle House with some friends when Officer Smith repeatedly told him to move his car. He initially refused because the car was not parked in a handicapped zone but eventually drove the car to the Wal-Mart parking lot down the street. The defendant denied drinking prior going to the Huddle House and said he did not drink while he was in the restaurant for more than two hours. He also said he asked to be taken to the hospital for a blood or urine analysis but was refused. The defendant acknowledged having two bottles of liquor in the car but said they were not in plain view but were inside a friend's purse. Asked why the officers smelled alcohol on him, the defendant surmised that some may have been spilled inside the car.

Upon conclusion of the evidence, the trial court found the State proved beyond a reasonable doubt that the defendant drove his vehicle under the influence and that he had three prior DUI

convictions. In addition, the trial court found the defendant guilty of refusing to submit to a breathalyzer, in violation of the implied consent law.

## ANALYSIS

### I. Motion to Suppress

The defendant argues the trial court erred in denying his motion to suppress the evidence because "the police interaction with [him] was in line with an investigatory detention which must be supported by reasonable suspicion" and maintains "that Officer Ruff did not have reasonable suspicion to continue the investigation." The State argues that "the initial [police] encounter was not a seizure; and the subsequent interaction was supported by reasonable suspicion." We agree with the State.

When this court reviews a trial court's ruling on a motion to suppress evidence, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Moreover, the party prevailing at the suppression hearing is afforded the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998). Thus, the findings of a trial court in a suppression hearing are upheld unless the evidence preponderates against those findings. See id. However, the application of the law to the facts found by the trial court is a question of law and is reviewed *de novo*. See State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

In Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968), the United States Supreme Court held that a law enforcement officer may conduct a brief, investigatory stop of an individual if the officer has a reasonable suspicion, based on specific and articulable facts, of criminal activity on the part of the individual. Under the Terry rationale, an officer may stop and detain a vehicle based on the reasonable suspicion that one of its occupants is either engaged in, or about to be engaged in, criminal activity. Ornelas v. United States, 517 U.S. 690, 693, 116 S. Ct. 1657, 1662, 134 L. Ed. 2d 911 (1996); State v. Simpson, 968 S.W.2d 776, 780 (Tenn. 1998); State v. Vineyard, 958 S.W.2d 730, 734 (Tenn. 1997). Reasonable suspicion is an objective standard and must be determined from the totality of the circumstances. United States v. Cortez, 449 U.S. 411, 417-18, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621 (1981); Ornelas, 517 U.S. at 696, 116 S. Ct. at 1661-62. "Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." Cortez, 449 U.S. at 417-18, 101 S. Ct. at 695. Reasonable suspicion will be found to exist only when "the events which occurred leading up to the stop" would cause an "objectively reasonable police officer" to suspect criminal activity on the part of the individual stopped. Ornelas, 517 U.S. at 696, 116 S. Ct. at 1661-62.

Officer Ruff never activated his blue lights or siren or ordered the defendant to pull over and stop driving. The defendant pulled into the Wal-Mart parking lot and parked his car of his own

-4-

accord. Under the facts of this case, the defendant's vehicle was not "stopped" and the trial court did not err in denying his motion to suppress.

The defendant argues, and the State concedes, that Officer Ruff's interaction with him in the Wal-Mart parking lot "was in line with an investigatory detention which must be supported by reasonable suspicion." Our supreme court has explained that a totality of the circumstances analysis must be used to determine if a police officer has reasonable suspicion to conduct an investigatory stop:

> In determining whether a police officer's reasonable suspicion is supported by specific and articulable facts, a court must consider the totality of the circumstances. United States v. Cortez, 449 U.S. 411, 417, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621, 629 (1981). This includes, but is not limited to, objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. Id., 449 U.S. at 418, 101 S. Ct. at 695, 66 L. Ed. 2d at 629. A court must also consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him. Terry, 392 U.S. at 21, 88 S. Ct. at 1880, 20 L. Ed. 2d at 906.

State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992).

Under the totality of the circumstances, we find Officer Ruff had reasonable suspicion to investigate the defendant for driving under the influence. Having received a radio call from a fellow officer alerting him to the fact that a person may be driving a blue Cadillac under the influence, Officer Ruff observed the defendant driving such a car and watched as he parked and exited the vehicle, seeing that he was unsteady on his feet. The officer also observed two bottles of liquor in plain view in the car. These facts were more than sufficient to permit him to ask the defendant to perform field sobriety tests. This issue is without merit.

## II. Use of Prior DUI Conviction

The State, having charged the defendant with fourth offense DUI, introduced into evidence judgments that reflected the defendant pled guilty to one DUI charge in Shelby County and two DUI charges in Lauderdale County. The defendant maintains that his October 26, 1998, Lauderdale County DUI conviction is invalid because the arresting "officer failed to sign the affidavit of complaint under oath before the magistrate or clerk" as required by Tennessee Rule of Criminal Procedure 3. The trial court found that the affidavit was sufficient because it was signed by the arresting officer, just not in the proper place.

The defendant cites no authority in his brief to support his proposition that an improperly signed affidavit of complaint, as he alleges was the case, affects the validity of the judgment. As such, we find this issue is waived. See Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b).

### III. Sufficiency of the Evidence

The defendant argues the evidence was insufficient to sustain his convictions for felony DUI and violation of the implied consent law.  We review this issue under the familiar rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also Tenn. R. App.  P. 13(e) ( "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt.") (emphasis added); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).  All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact.  See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).  Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation.  The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand.  Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses.  In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).  In a bench trial, the verdict of the trial judge is entitled to the same weight on appeal as that of a jury verdict.  See State v. Horton, 880 S.W.2d 732, 734 (Tenn. Crim. App. 1994).  The burden is on a convicted defendant to show that the evidence is insufficient.  See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Tennessee Code Annotated section 55-10-401 states that "[i]t is unlawful for any person to drive . . . on any of the public roads and highways of the state, . . . while [u]nder the influence of any intoxicant."  Tenn. Code Ann. § 55-10-401(a)(1) (2004).  A fourth or subsequent DUI conviction is a Class E felony.  Id. § 55-10-403(a) (2004).

Tennessee Code Annotated section 55-10-406(a) provides that "[a]ny person who drives a motor vehicle in this state is deemed to have given consent to a test or tests for the purpose of determining the alcoholic content of that person's blood."  Tenn. Code Ann. § 55-10-406(a)(1) (2004).  If a person refuses to submit to a test after being advised of the consequences of refusing to do so, "such person shall be charged with violating this subsection."  Id. § 55-10-406(a)(4)(A).

The defendant's argument on this issue is that "the trial court erred in accrediting the testimony of the State's witnesses over the testimony of the defense witnesses."  Officer Ruff, a

specially trained DUI law enforcement officer, testified that he observed the defendant driving his car on the public roadway, that he was unsteady on his feet and smelled of alcohol, and that he performed poorly on the field sobriety tests. In addition, Officer Ruff said the defendant refused to submit to a breathalyzer test after the officer read the implied consent form to him. Officer Rhodes testified that the defendant appeared to be under the influence of alcohol, that he smelled "[f]airly strong" of alcohol, and that he refused to take the breathalyzer test Officer Ruff attempted to administer to him. As was its right, the trial court credited this testimony rather than that of the defendant. Accordingly, we conclude that the evidence was sufficient to sustain the defendant's convictions for felony DUI and violation of the implied consent law.

## IV. Sentencing

The defendant argues the trial court improperly sentenced him to two years for his DUI conviction, the maximum sentence in the Class E felony range. When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-402, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. If the appellate court determines the sentence is erroneous, it "may affirm, vacate, set aside, increase or reduce the sentence imposed or remand the case or direct the entry of an appropriate order." Tenn. Code Ann. § 40-35-402(c) (2003).

As a Range I, standard offender convicted of a Class E felony, the defendant was subject to a sentence ranging from one to two years. See Tenn. Code Ann. § 40-35-112(a)(5) (2003). Under the 1989 Sentencing Act, the sentence to be imposed for a Class E felony is presumptively the minimum sentence in the range unless there are enhancement factors present. Id. § 40-35-210(c) (2003). Procedurally, the trial court is to increase the sentence within the range based upon the existence of any applicable enhancement factors and then reduce the sentence as appropriate based on applicable mitigating factors. Id. § 40-35-210(d), (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. Id. § 40-35-210, Sentencing Commission Cmts.; State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986).

The defendant argues that the trial court erred in failing to note in the record any enhancement or mitigating factors it considered and "that the adjustment of the sentence above the minimum in the range was not appropriate." In imposing the maximum sentence, the trial court, apparently referring to the defendant's past driving convictions, said, "He's a danger to people." The defendant's prior convictions certainly justified imposition of the maximum sentence. Thus, if the defendant is correct that the trial court failed to specify specific enhancement factors, in our *de novo* review, we conclude that the defendant's prior convictions support imposition of the penalty which the trial court imposed. As an additional enhancement factor, we note that according to the defendant's presentence report, which he stipulated, he has a 1992 prior conviction for DUI in Arkansas. See Tenn. Code Ann. § 40-35-114(1) (Supp. 2005). We agree with the State that the record more than justifies the defendant's two-year sentence in this case.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE